UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AARON PASCHAL, | |
| Plaintiff, | |
| v. | Case No. 1:24-CV-183 JD |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Aaron Paschal applied for disability insurance benefits under Title XVI of the Social Security Act, alleging that he became disabled in November 2007. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Mr. Paschal was not disabled. The Appeals Council later denied his request for review, and Mr. Paschal now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

B.  **Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## C. Discussion

**(1)** *The ALJ's Decision*

Mr. Paschal filed a Title XVI application for disability insurance benefits alleging disability beginning in November 2007. His claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on August 10, 2023.

At the hearing, Mr. Paschal testified, among other things, that he suffers from Postural Orthostatic Tachycardia Syndrome (POTS), which affects his blood vessels, making physical labor difficult due to increased heart rate and low blood pressure, causing dizziness, fatigue, and sometimes vision problems. (R. at 65.) He said he experiences symptoms of POTS more severely in hot weather, which can lead to dizziness and vision issues. (R. at 66.) He also stated that he suffers from migraine headaches, which are managed with medication (R. at 67), and has sleep apnea, which remains untreated due to difficulties with using a CPAP machine and other devices but which he manages by sleeping on his side (R. at 68).

Mr. Paschal further testified that he has been diagnosed with depression, anxiety, ADHD, and autism. (R. at 73.) He previously received counseling from Russell Mynheir, which helped him manage depression and negativity. He no longer sees the counselor but continues to take lithium for anxiety and depression, prescribed by Dr. Ahmad. (R. at 74–75.) Mr. Paschal said he receives services from a behavioral skills coach, Adam Blake, whom he sees every other week. (R. at 76–77.) According to Mr. Paschal, he finds time pressure challenging and requires motivation to complete tasks effectively. (R. at 78.)

On August 25, 2023, the ALJ issued a decision finding that Mr. Paschal was not disabled. (R. at 45.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ

determined that Mr. Paschal suffered from the following severe impairments: "history of autism spectrum disorder, depression, anxiety, attention deficit hyperactivity disorder (ADHD), postural orthostatic tachycardia syndrome (POTS), sleep apnea, and episodic migraine headaches without aura."[1] (R. at 22.)

At Step 4, the ALJ determined Mr. Paschal's residual functional capacity ("RFC"),[2] finding that he can

> perform light work[3] . . . except he can stand and/or walk, in combination, 4 hours in an 8-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders, ropes or scaffolds. He must avoid concentrated exposure to extreme cold, heat, humidity, wetness, loud noise, vibrations, bright/flashing lights, pulmonary irritants, including fumes, odors, dust, gases, poorly ventilated areas and chemicals, as well as hazards, including operational control of dangerous moving machinery, unprotected heights, slippery, uneven, moving surfaces. Mentally, the claimant can have no sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are workplace changes, they are introduced gradually and work that does not require satisfaction of strict or rigid production quotas, does not involve assembly line pace work, or hourly quota work, but can tolerate a flexible work pace with end of day goals.

(R. at 38.)

---

[1] The ALJ found that Mr. Paschal suffered these severe impairments both before and after attaining age 18 (R. at 22, 38.) Mr. Paschal is not challenging the ALJ's determination as it applies before his 18th birthday. (*See* Pl. Br., DE 10 at 1 n.1.)

[2] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. The VE testified that there were jobs available in significant numbers in the national economy for such an individual: collator operator, routing clerk, and mail clerk. (R. at 93.) The VE further testified that to maintain employment, "[g]enerally, workers should stay on task around 90% of the workday, and that would be exclusive of regular breaks." (R. at 95.) Additionally, "workers should not accumulate more than 12 absences per year, and virtually, termination could [occur] sooner if someone had the infraction of a no call/no show, or if they were missing consecutive days in a row or consecutive weeks or months in a row." (*Id.*)

In his decision, the ALJ noted that Mr. Paschal's POTS as well as his migraine headaches are well controlled with medication. (R. at 40.) His POTS did worsen after he was diagnosed with COVID but has largely recovered since then and he has been able to hike with his friends and his father. (*Id.*) The ALJ next found that Mr. Paschal's mental impairments, including autism, depression, and anxiety, are well controlled with medication, and he has been able to work part-time since 2021. (R. at 40, 42.) Still, the ALJ found that "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations."[4] (R. at 23, 38.)

Dr. Matthew Barb is Mr. Paschal's primary care physician, and Dr. Hani Ahmad is his treating psychiatrist. The ALJ considered their medical opinions but found them both unpersuasive. Dr. Barb opined that Mr. Paschal is limited to standing 30 minutes at one time, sitting 2 hours total, and standing/walking 4 hours total in an 8-hour workday. He also noted the

---

[4] The areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. A person has a moderate limitation if his mental "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation is greater than a mild limitation, which means that mental function is "slightly" limited, but less than marked limitation, which means that the mental function is "seriously limited." *Id*.

claimant would be off-task 10% of the workday and absent more than four days per month. The ALJ rejected these opinions finding that they were not well supported with references to the objective medical evidence and were inconsistent with the record. The ALJ noted that Dr. Barb's physical exam of the claimant was normal except for swelling of his face, and there was no explanation or support for the limitations regarding time off-task, absenteeism, and limitations sitting.

Dr. Ahmad opined that Mr. Paschal was seriously limited in dealing with normal work stress and that he does not always understand social cues. Similar to Dr. Barb's opinions, the ALJ found these opinions were not supported by Dr. Ahmad's own treatment notes. Likewise, the ALJ noted that Mr. Paschal's exams showed no such limitations, nor did his own testimony or work history.

The ALJ evaluated the opinions of state agency physicians Karl Kennedy, Psy.D., and M. Brill, M.D., who concluded that Mr. Paschal's impairments were nonsevere and caused no limitations. The ALJ found these opinions unpersuasive, as they were inconsistent with the overall record. Upon reconsideration, William Shipley, Ph.D., and Richard Wenzler, M.D., opined that Mr. Paschal had less than marked limitations in attending and completing tasks, interacting and relating with others, and health and physical well-being, with no limitations in the remaining domains. The ALJ found these opinions generally persuasive, except regarding social interaction, noting that Mr. Paschal testified to having no difficulties in this area. Dr. Wenzler also opined that Mr. Paschal was limited to light exertional work with specific physical restrictions; the ALJ found this assessment persuasive as it aligned with objective medical evidence. However, the ALJ was unpersuaded by Dr. Shipley's opinion that Mr. Paschal's mental impairments were nonsevere, finding it unsupported by the medical record.

**(2) *Concentration, Persistence, and Pace***

In his appeal, Mr. Paschal argues that the ALJ committed three reversible errors. First, he contends that the ALJ's analysis of the opinions of Dr. Ahmed and Dr. Barb is not supported by substantial evidence. Second, he claims that the ALJ's conclusion that his POTS was well controlled with medication lacks substantial evidentiary support. Finally, Mr. Paschal argues that the ALJ did not incorporate all of his documented limitations into the RFC. Specifically, the ALJ found he suffered moderate limitations in concentrating, persisting, or maintaining pace, and in adapting or managing oneself, but failed to address how these limitations would affect Mr. Paschal's ability to stay on task in a competitive work environment. The latter argument warrants remand for further consideration. As a result, the Court addresses that argument alone and declines to reach the remaining two, leaving them to be resolved upon remand if necessary.

At Step 3 of the sequential analysis, the ALJ found that Mr. Paschal has moderate limitations in concentrating, persisting, and maintaining pace,[5] and adapting or managing himself (R. at 38.) Even so, in his RFC finding as well as the hypothetical to the VE, the ALJ is silent about concentration and persistence:

> Mentally, the claimant can have no sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are workplace changes, they are introduced gradually and work that does not require

---

[5] Concentration, persistence, and pace refer

to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

> satisfaction of strict or rigid production quotas, does not involve assembly line pace work, or hourly quota work, but can tolerate a flexible work pace with end of day goals.

(R. at 38.) On the basis of these and other limitations, the VE testified that there are a significant number of jobs in the national economy that the hypothetical person could perform. (R. at 93.) The ALJ relied on that testimony to conclude that Mr. Paschal was not disabled. (R. at 35–36.) The ALJ's RFC and the hypothetical, which is derived from the RFC, are incomplete because they omit Mr. Paschal's moderate limitations in concentration and persistence.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.*; *see Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations.") (collecting cases). Adequate concentration, persistence, and pace are required for competitive employment. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i) ("To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task."). "Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and the hypothetical question." *Winsted*,

923 F.3d at 477 (emphasis in the original).  "[W]e will not assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Yurt*, 758 F.3d at 857.

The record does not reflect that the VE reviewed Mr. Paschal's medical history in a manner that would allow her to account for relevant work limitations absent a complete hypothetical, and the Commissioner is silent on this issue. Therefore, the ALJ should have stated an adequate hypothetical to the VE and, correspondingly, an adequate RFC that justifies the ALJ's ultimate conclusion that there are jobs in significant numbers in the national economy that Mr. Paschal can perform. Without incorporating Mr. Paschal's moderate limitations in concentration and persistence, the hypothetical was incomplete and potentially misleading. While the RFC references pace—"work that does not require satisfaction of strict or rigid production quotas, does not involve assembly line pace work, or hourly quota work, but can tolerate a flexible work pace with end of day goals"—pace is conceptually distinct from concentration and persistence. According to Webster's Third New International Dictionary (1981), pace is defined as "rate of performance or delivery"; concentration as "directing of the attention or of the mental faculties toward a single object"; and persistence as "power or capacity of continuing in a course in the face of difficulties." Given these distinct definitions, the ALJ's reference to pace does not encompass limitations in concentration and persistence. Moreover, "workplace changes in terms of use of work tools, work processes, or work settings" do not suggest limitations on concentration and persistence. *Cf. Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) (finding that the ALJ's "proposed limitations—that [plaintiff] perform only 'simple, routine, repetitive tasks *with few workplace changes*'" do not account for "limitations of concentration, persistence, and pace" (emphasis added)). Without a complete hypothetical, there

10

is no assurance that the VE fully understood Mr. Paschal's limitations so as to provide correct information about the jobs he can do that are available in significant numbers in the national economy. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). As the Seventh Circuit put it in *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010), "our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations [of concentration, persistence, and pace] is to include all of them directly in the hypothetical." Yet despite the ALJ finding moderate limitations in concentration and persistence, he omitted them from both the hypothetical and the RFC. There's no indication of how those limitations affect, if at all, Mr. Paschal's ability to maintain a schedule, attend work regularly, be punctual within customary tolerances, or complete a normal workday or workweek. In other words, the VE gave his opinion about available jobs for someone like Mr. Paschal without knowing the extent to which he can complete tasks in a timely manner, ignore or avoid distractions, work without being disruptive, sustain a routine and regular attendance, or work a full day without needing more than the allotted number or length of rest breaks. *Cf.* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

In defending the ALJ, the Commissioner essentially argues that Mr. Paschal has in fact no mental limitations because Dr. Ahmad "documented normal mood, cognition, insight, and judgment on mental status examination" and, in early 2023, his examinations remained

unremarkable (Def. Br., DE 16 at 6–7.) The Commissioner also insists that Mr. Paschal "'must not only prove the existence of impairment, [he] must also prove the existence of limitation.'" (*Id.* (quoting *Holloway v. O'Malley*, No. 3:23-CV475, 2024 WL 1364790, at *5 (N.D. Ind. Apr. 1, 2024).) These arguments are internally inconsistent and unpersuasive. Despite citing positive mental status findings, the ALJ nevertheless found that Mr. Paschal had moderate limitations in concentration, persistence, and pace. Indeed, the ALJ accounted for limitations in pace in the RFC. The Court must assume that, in limiting Mr. Paschal's concentration and persistence requirements, the ALJ did what the evidence dictated him to do. And to the extent that the Commissioner suggests that Mr. Paschal must demonstrate the existence of a limitation, that burden has already been satisfied—a finding of moderate limitations in concentration and persistence clearly classifies as such a limitation.

The Commissioner fails to explain how the hypothetical adequately conveys Mr. Paschal's moderate limitations in concentration and persistence. Consequently, the ALJ's reliance on the VE that there are jobs in the national economy that Mr. Paschal can perform is tainted with error, and the Court has no confidence that the ALJ's conclusion is based on substantial evidence. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (an error is harmless if, upon examination of the record, the reviewing Court can "predict with great confidence what the result of the remand will be"). This is particularly so because the VE noted in her testimony—in response to the ALJ's question about how much off-task behavior employers generally tolerate—that being off-task more than 10% of the time and absent more than 12 days a year would be job-prohibitive. So it would be critical for the VE to understand Mr. Paschal's limitations regarding concentration and persistence as they may directly impact his ability to do other work in the national economy. *See Diaz v. Berryhill*, No. 2:17-CV-314, 2018

WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018) (when the ALJ considers off-task time but fails to explain whether the claimant was limited by any off-task allowances, the ALJ fails to provide a "logical bridge" between the evidence and the RFC conclusion, requiring remand). In his argument, the Commissioner also overlooks that the burden at step five—the step in question—is on the Commissioner. *See Young*, 362 F.3d at 1000. In short, the Commissioner's response does not address the requirement that the areas of mental functioning—concentration and persistence––must be accounted for in the RFC.

The Seventh Circuit makes few exceptions for the requirement that all the claimant's limitations be included in the RFC so that the VE can base her consideration about the available jobs on the basis of what the claimant can and can't do. Such cases do exist but their reach is very narrow. For example, the Seventh Circuit has allowed the RFC to stand "when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *O'Connor-Spinner*, 627 F.3d at 619 (citing *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007); and *Sims v. Barnhart*, 309 F.3d 424, 427, 431–32 (7th Cir. 2002)). Similarly, the court allowed an RFC where, "although the limitations on concentration, persistence and pace were not mentioned in the hypothetical, the underlying conditions were." *Id*. at 620 (citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)). But none of these scenarios apply here given that nothing in the RFC can be read as a substitute for moderate concentration and persistence.

### D. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: June 23, 2025

                                         /s/ JON E. DEGUILIO
                                         Judge
                                         United States District Court